IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Malvin Ryan Gross,                         :
                        Petitioner          :
                                            :
              v.                            :     No. 228 C.D. 2025
                                            :     Submitted:  May 12, 2026
Unemployment Compensation Board             :
of Review,                                  :
                        Respondent          :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE STACY WALLACE, Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
PRESIDENT JUDGE COHN JUBELIRER           FILED:  July 24, 2026

        Malvin Ryan Gross (Claimant), pro se, petitions for review of an Order of the Unemployment Compensation Board of Review (Board), which affirmed the Referee's decision denying Claimant benefits pursuant to Section 402(e) of the Unemployment Compensation Law, 43 P.S. § 802(e) (UC Law).[1]  On appeal, Claimant argues that the Board erred in finding that Claimant engaged in willful misconduct, thus rendering Claimant ineligible for unemployment compensation benefits.  However, Claimant's conduct satisfies the criteria of willful misconduct, as he had notice of the Information Systems policies prohibiting his conduct, those policies were reasonable, and Employer satisfied its evidentiary burden in

_____

[1] Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).

demonstrating Claimant had violated them and Claimant did not establish good cause for his conduct. For those reasons, we are constrained to affirm the Board's Order.

## I. BACKGROUND

Evangelical Community Hospital (Employer) employed Claimant as an Emergency Medical Technician from August 15, 2016, through May 21, 2024, (Referee's Decision, Findings of Fact (FOF) ¶ 1), at which time Employer discharged him for violating Employer's User Account Access Policy, Information Systems Software and Hardware Installation Policy, and Information Systems Removable Device Policy (Non-IS Staff) (collectively, Policies). (Certified Record (C.R.) at 136-37.)

After Employer terminated Claimant's employment, Claimant applied for unemployment compensation benefits, which the Unemployment Compensation Service Center (UC Service Center) denied pursuant to Section 402(e) of the UC Law. (*Id.* at 30.) Claimant appealed, and the Referee conducted a hearing, where the Referee accepted evidence and took testimony from Employer's witnesses and from Claimant.

Joyce Jamieson, Employee Relations and Compliance Coordinator at Employer, testified at the hearing that every employee, upon hire, receives a copy of the employee handbook, which includes the aforementioned Policies. (*Id.* at 89, 100.) Employer submitted into evidence a copy of its Policies. (*Id.* at 111-12, 118-27.) Jamieson stated Employer requires all employees to sign an Employee Responsibility Statement, which states the employee agrees to abide by the policies in the handbook. (*Id.* at 100.) Employer submitted a signed copy of the Employee

2

Responsibility Statement as evidence, and Jamieson stated the signature was Claimant's. (*Id.* at 101, 117.)

When the Referee asked Claimant whether the signature on the Employee Responsibility Statement was his, Claimant stated he "c[ould]n't verify that." (*Id.* at 104.) However, the Referee confirmed with Claimant that his date of hire was the same date as the signature on the signed Employee Responsibility Statement. (*Id.*)

Jamieson also testified that the Policies prohibit employees from modifying or installing software or hardware of any kind and the Policies' goal is to protect Employer's resources and patient privacy and to prevent "inappropriate or unauthorized" use. (*Id.* at 99-100.) In addition, to being provided a copy of the Policies upon hire, Jamieson testified Employer had issued Claimant a Performance Improvement Plan (PIP) in 2022, when he violated the Policies by disconnecting a computer tower and replacing an internet router. (*Id.* at 100-01.) According to Jamieson's testimony and the PIP, which Employer introduced into evidence, the PIP prohibited Claimant from trying to "fix[, ] change[, ] relocate[,] or disconnect anything belonging either to the fire department or the Evangelical Regional Mobile Medical Services [(ERMMS)] or [Employer]." (*Id.* at 100-01, 115-16.) The Referee asked Claimant about signing the PIP, and Claimant stated he could not "verify" whether it was actually his signature on the PIP. (*Id.* at 104.)

During the hearing, Deputy Chief of ERMMS Gene Baker, Jr. described Employer's investigation of the violation, which included, among other things, reviewing surveillance video footage, confirming the router was changed, and taking statements from employees. (*Id.* at 98, 102.) Deputy Chief Baker testified Claimant admitted to removing the router and replacing it with his own to print from the fire department computer to one of the hospital's printers. (*Id.* at 96.)

3

Chief of ERMMS Jonathan Bastian reviewed the surveillance footage and testified that it captured Claimant, clearly identifiable with his face and uniform ID badge visible, carrying a wireless internet router from his locker to an IT equipment station, where he was "moving pieces of equipment around." (*Id.* at 108-09.) Chief Bastian said the footage then depicted him walking down the steps with a router in a grocery bag. (*Id.*)

When Jamieson asked him why he moved the routers, Claimant stated, "that's not what this hearing is about today," and argued that "this hearing is about the unemployment denial," and "not anything subjective in reference." (*Id.* at 106.) After the Referee explained that Claimant had the burden to prove good cause for otherwise willful misconduct and asked if Claimant wanted to answer Jamieson's question, Claimant said "no." (*Id.*).

Based upon the parties' testimony, the Referee found, as follows:

2. [] [E]mployer had an established Information Systems Removable Device Policy which was to prevent private and confidential patient and business data to be deliberately or inadvertently moved outside the enterprise network and/or the physical premises where it could potentially be accessed by unsanctioned resources. This policy was dated October 7, 2010.

3. [] [E]mployer had an established Information Systems Software and Hardware Installation Policy which only allowed Evangelical Community Hospital Information Systems (IS) Department to perform software and hardware installations. This policy was dated June 14, 2005.

4. [] [E]mployer had an established ECH User Account Access Policy which allowed only devices owned by the hospital and configured to IS standards permission to access the ECH network.

5. The policies indicated above were given to all employees upon hire and were available on [] [E]mployer's internal website.

4

6. On March 14, 2024,[2] [] [E]mployer became aware that [] [C]laimant had been observed removing a router from his locker and connecting it to existing information technology equipment. During the investigation, [] [E]mployer['s] witnesses observed [] [C]laimant on video provided by the Milton Fire Department removing a device from his locker, manipulating cables and equipment, and then leaving the area with a device in a plastic grocery bag. [] [E]mployer['s] witness had verified it was [] [C]laimant on the video as [] [C]laimant had turned his face toward the camera.

7. [] [C]laimant was terminated for his violation of several employer policies.

(Referee's Decision, FOF ¶¶ 2-7.)

The Referee determined that Employer met its burden of establishing that Claimant committed willful misconduct. (Referee's Decision at 3.) In so holding, the Referee noted that Claimant had access to the Policies forbidding this behavior and that the misconduct was caught on video. (*Id.*) Accordingly, the Referee upheld the UC Service Center's Determination denying Claimant unemployment compensation benefits based on ineligibility under Section 402(e) of the UC Law. (Referee's Order.)

Claimant appealed to the Board, asserting that the equipment was his personal property that he had temporarily loaned to the Employer, and he provided a receipt for the purchase of the router. (C.R. at 151.) He argued that Employer's router had failed, and that "[E]mployer's Internet Technology – IT Systems nor network were affected." (*Id.*) He further argued that his termination was retaliation from Employer. (*Id.*) The Board affirmed the Referee's Determination, adopting and incorporating the Referee's findings and conclusions. (Board's Order at 1.) The Board further found:

---

[2] This is likely a scrivener's error intended to say May 14, 2024, as the dates in the testimony and evidence indicated that the incident occurred in May, not March, of 2024.

[C]laimant failed to address these assertions [that the router was his personal property that he loaned to Employer and that he had a receipt regarding his purchase of the router in question] during the hearing despite having the opportunity to do so. The Referee explicitly asked the [C]laimant why he moved the router; despite this, the [C]laimant did not assert ownership of the equipment or produce any documentation, such as the receipt, to support his claim at that time. The Board is limited to the evidence presented during the hearing when making its decision, and therefore, it cannot consider the receipt submitted after the hearing. . . .

During the investigation, it was disclosed that other employees observed [] [C]laimant changing the wireless routers, and [] [C]laimant admitted to manipulating and moving the router.

At the hearing, [] [C]laimant failed to present any evidence or testimony to establish good cause or justification for violating [E]mployer's [P]olicies.

Regarding [] [C]laimant's argument that [] [E]mployer engaged in retaliatory tactics, at the hearing, [] [C]laimant did not provide proof regarding such conduct.

Based on the testimony and evidence provided, [] [E]mployer met its burden of showing that [] [C]laimant's actions rose to the level of willful misconduct. As such, [] [C]laimant is ineligible for benefits under Section 402(e) of the UC Law.

(*Id.* at 1-2.)

Claimant now seeks review by this Court.

## II. PARTIES' ARGUMENTS

On appeal, Claimant argues he did not engage in willful misconduct and that the wireless device he took was his personal property. (Claimant's Brief (Br.) at 4.) Claimant contends that he had good cause consisting of "legitimate reasons for the

conduct in question, including the immediate need to replace a dead electronic device." (*Id.* at 5.) Claimant asks the Court to reverse the Board's Order. (*Id.*)[3]

The Board states substantial evidence supports its findings, specifically the credited testimony of Employer's witnesses and their observations of the video footage of the conduct. (Board's Br. at 8.) While Claimant proffers a different version of events, the Board argues that Claimant admitted to performing the alleged misconduct and that he was aware his actions violated the organization's policies. (*Id.* at 13.) The Board notes Claimant was aware of the Policies because Employer gave them to him during his onboarding and because Employer reminded him of them in a PIP in 2022. (*Id.* at 5, 13.) Finally, the Board disputes that Claimant had good cause for the alleged conduct. (*Id.* at 14-16.)

## III. DISCUSSION

Our review "is limited to determining whether the original order violated constitutional rights, committed an error of law, or failed to support facts with substantial evidence." *Gordon Terminal Serv. Co. v. Unemployment Comp. Bd. of Rev.*, 211 A.3d 893, 897 n.3 (Pa. Cmwlth. 2019) (citing 2 Pa.C.S. § 704). Evidence is substantial when "a reasonable mind would accept [it] as adequate to support a conclusion." *Cambria Cnty. Transit Auth. ("CamTran") v. Unemployment Comp.*

---

[3] Additionally, Claimant argues on appeal that because the Board affirmed the Referee's decision after 18 weeks, it violated the Board's policies regarding timeliness. (Claimant's Br. at 3.) The Board responds that there is no official deadline for it to issue a decision. (Board's Br. at 2-3 n.2.) We agree. Claimant does not provide any evidence that the Board had violated an internal policy regarding the timeliness of its decision. Pennsylvania regulations state that an unemployment compensation appeal decision shall be "rendered promptly after the conclusion of the hearing." 34 Pa. Code § 101.88. "What is the greatest promptness that is administratively feasible in an individual case depends on the facts and circumstances of that case." 20 C.F.R. § 650.1 (1972) (applying to state unemployment compensation boards issuing decisions on appeal as a condition of receiving funds under the Social Security Act). This Court is therefore unable to rule that the Board did not issue its decision in a timely manner.

7

*Bd. of Rev.*, 201 A.3d 941, 947 (Pa. Cmwlth. 2019) (internal quotation marks and citation omitted). "In unemployment compensation proceedings, the Board is the ultimate factfinder and is empowered to resolve conflicts in the evidence and to determine the credibility of witnesses." *Brannigan v. Unemployment Comp. Bd. of Rev.*, 887 A.2d 841, 843 (Pa. Cmwlth. 2005) (citation omitted).

"The Board's findings are conclusive on appeal so long as the record, when viewed in its entirety, contains substantial evidence to support the findings." *W. & S. Life Ins. Co. v. Unemployment Comp. Bd. of Rev.*, 913 A.2d 331, 335 (Pa. Cmwlth. 2006) (citation omitted). "This Court is bound to examine the testimony in the light most favorable to the party in whose favor the Board has found, giving that party the benefit of all inferences that can logically and reasonably be drawn from the testimony to determine if substantial evidence exists for the Board's findings." *Cam Tran*, 201 A.3d at 947 (internal quotation marks and citation omitted).

Under the UC Law, individuals are ineligible for unemployment compensation benefits when their unemployment results from their "discharge or temporary suspension from work for willful misconduct connected with [their] work." 43 P.S. § 802(e). Although Claimant argues the term is ambiguous, the definition of "willful misconduct" in the unemployment compensation context is well defined and established as:

> (1) an act of wanton or willful disregard of the employer's interest, (2) a deliberate violation of the employer's rules, (3) a disregard for standards of behavior which the employer has a right to expect of an employee, or (4) negligence indicating an intentional disregard of the employer's interest or of the employee's duties and obligations to the employer.

*Woodring v. Unemployment Comp. Bd. of Rev.*, 284 A.3d 960, 964 (Pa. Cmwlth. 2022) (internal quotation marks and citation omitted).

8

"The employer bears the burden of proving that the claimant's unemployment is due to the claimant's willful misconduct." *Gordon Terminal Serv. Co.*, 211 A.3d at 898. There is a long-standing four-prong test for determining whether the violation of a work rule is willful misconduct. "When asserting that a discharge was based on a violation of a work rule, an employer must establish [1] the existence of the rule, [2] the reasonableness of the rule, [3] the claimant's knowledge of the rule, and [4] its violation." *Pierce-Boyce v. Unemployment Comp. Bd. of Rev.*, 289 A.3d 130, 136 (Pa. Cmwlth. 2022) (citing *Henderson v. Unemployment Comp. Bd. of Rev.*, 77 A.3d 699, 718 (Pa. Cmwlth. 2013) (citing *Ductmate v. Unemployment Comp. Bd. of Rev.*, 949 A.2d 338, 344 (Pa. Cmwlth. 2008))). "An employee who has no notice of a work rule will not be denied benefits based on willful misconduct." *Id.*

"Once an employer meets its burden of proving willful misconduct, the burden shifts to the employee to prove good cause for [the employee's] actions." *Id.* at 135. "An employee establishes good cause where [the employee's] actions are justified or reasonable under the circumstances." *Id.* "[W]hether or not an employee's actions amount to willful misconduct is a question of law subject to review by this Court." *Gordon Terminal Serv. Co.*, 211 A.3d at 898 (citation omitted).

Because the Board found this discharge was based on the violation of a work rule, we examine whether there is substantial evidence to support the Board's findings on each of the four prongs. *Pierce-Boyce*, 289 A.3d at 136. We examine the facts in the light most favorable to Employer, for whom the Board found. *Cam Tran*, 201 A.3d at 947.

Regarding the first prong, the existence of the rule, Employer presented witness testimony and evidence demonstrating the existence of the Policies it alleged

9

Claimant violated. (C.R. at 118-27.) Employer alleges Claimant violated multiple policies including the Information Systems Removable Device Policy (Non-IS Staff), which Employer designed to prevent data breaches within the organization through technology equipment regardless of whether the equipment belongs to the organization. (C.R. at 118.) According to the Information Systems Software and Hardware Installation Policy, Employer expects employees to refrain from installing software or hardware to the organization's system without authorization. (*Id.* at 123.) The ECH User Account Access Policy prohibits employees from using devices not owned by the hospital to access the ECH network except for remote access devices defined under another policy. (*Id.* at 126.) Employer also presented the signed Employee Responsibility Statement, which the Board had discretion to determine was credible and thus demonstrated the existence of the Policies from the first day of Claimant's employment. (*Id.* at 117.) Employer has thus satisfied the first prong of the test, as there is substantial evidence that the Policies existed throughout Claimant's tenure with employer.

Neither party disputes the reasonableness of the Policies under the test, thus satisfying the second prong. (*Id.*) Moreover, Employer demonstrated that the Policies are reasonable, as they aim to prevent data breaches and protect patient privacy.

The third prong is Claimant's knowledge and notice of the policies. *Id.* Employer established the existence of the relevant work rules by submitting copies of the Policies into evidence and presenting testimony that it provides all employees with copies of the Policies during onboarding. (C.R. at 100-01, 118-22.) Additionally, Employer submitted a copy of Claimant's PIP from November 11, 2022, which states Claimant does not have the authority to "fix, change, relocate, or

10

disconnect anything belonging to the [Fire Department], ERMMS, or [Employer] without approval." (*Id.* at 115-16.) Jamieson alleged the PIP had Claimant's signature. (*Id.* at 106.) Finally, Employer also submitted a copy of the Employee Responsibility Statement with Claimant's signature, which was signed upon Claimant's hire and states that Claimant takes responsibility for following the handbook rules. (*Id.* at 117.) The Board had the discretion to determine that Employer was credible in its assertion that given the testimony and signatures, Claimant was aware of the policies despite his testimony that he could not verify whether his signature was on those documents, thus satisfying the third prong. *Brannigan*, 887 A.2d at 843.

The final prong is whether there was substantial evidence to support the finding that Claimant violated the policies. *Pierce-Boyce*, 289 A.3d at 136. The Board found, based on the evidence, that Claimant changed the wireless routers, which Claimant admits, and by doing so, Claimant violated the Policies. (Claimant's Br. at 5; Board's Order at 2.) At the Referee Hearing, Employer presented evidence from the Deputy Chief and Chief of ERMMS, who testified that Employer investigated Claimant's conduct, including reviewing video surveillance evidence showing Claimant removing a router from his locker, manipulating the wires and routers at the IT station, and leaving with a router. (C.R. at 107-09.) Although Claimant argued in his appeal that Employer's witnesses' testimony was hearsay because it discussed video footage that Employer did not submit to the Court as evidence, the Referee and thus the Board properly admitted this testimony as evidence. A witness's testimony regarding what they saw on surveillance video footage is not inadmissible hearsay. *Yost v. Unemployment Comp. Bd. of Rev.*, 42 A.3d 1158, 1164 (Pa. Cmwlth. 2012). Rather, the Board may make a credibility

11

determination based on the testimony and its correspondence or lack thereof with other testimony and evidence. *Id.* The Board in this case was therefore entitled to consider Deputy Chief Baker and Chief Bastian's testimony pertaining to the surveillance video footage when making credibility determinations. A reasonable mind could accept this evidence to support the conclusion that Claimant had violated Employer's policies. *Cam Tran*, 201 A.3d at 947. Moreover, in his brief, Claimant does not contend that he did not remove and replace a router. Removing and replacing a router would violate the Policies. Thus, we conclude the Board's findings are supported by substantial evidence.

Since Employer has met its burden to determine that the Policies existed, the Policies were reasonable, Claimant had notice of them, and Claimant violated them, the burden shifts to Claimant to demonstrate that he had good cause for his conduct. *Pierce-Boyce*, 289 A.3d at 135. Claimant argues that he had good cause because there was "an immediate need to replace a dead electronic device," which "served Milton Fire Department" and that he had discussed this with Milton Fire Department. (Claimant's Br. at 5.) He also made these arguments to the Board, as well as allegations that Employer engaged in retaliation. Unfortunately, Claimant did not present **any testimony or evidence** at the hearing to explain his actions, to establish good cause, or to provide evidence of retaliation. At the hearing, Employer asked Claimant about why he moved the router. When he did not answer, the Referee explained to Claimant that if Employer showed willful misconduct, the burden would shift to him to show good cause and asked him if he would like to answer the question. He did not. Therefore, the Board found that Claimant failed to establish good cause or justification for his actions. (Board's Order at 2.) Like the Board, we cannot consider evidence that was not presented at the hearing.

12

*Umedman v. Unemployment Comp. Bd. of Rev.*, 52 A.3d 558, 564 (Pa. Cmwlth. 2012.)[4]  Because he did not present any evidence at the hearing, Claimant did not establish good cause existed for violating Employer's Policies.  Consequently, we are constrained to hold the Board did not err in concluding Claimant was ineligible for benefits under Section 402(e).

## IV. CONCLUSION

After careful review, and constrained by our scope and standard of review, we must affirm the Board's Order.

_____
RENÉE COHN JUBELIRER, President Judge

---

[4] For the same reasons, we cannot consider Claimant's assertions that the Referee allegedly was previously employed by Employer and, therefore, should have recused herself.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Malvin Ryan Gross,          :
           Petitioner     :
                     :
         v.           :     No. 228 C.D. 2025
                     :
Unemployment Compensation Board  :
of Review,             :
           Respondent   :

# **O R D E R**

NOW, July 24, 2026, the Order of the Unemployment Compensation Board of Review, dated December 30, 2024, is **AFFIRMED**.

 

_____
RENÉE COHN JUBELIRER, President Judge